**William D. ZACK, Petitioner–Appellant,**

**v.**

**UNITED STATES of America, Respondent–Appellee.**

No. 99–1279.

United States Court of Appeals, Sixth Circuit.

May 14, 2001.

Before COLE and GILMAN, Circuit Judges; ALDRICH, District Judge.*

GILMAN, Circuit Judge.

In 1991, William D. Zack was convicted of conspiring to defraud the United States, evading taxes, and filing false tax returns. He was sentenced to 46 months of imprisonment and 2 years of supervised release. His conviction was affirmed on direct appeal, and his three previous motions to vacate his sentence have all been denied. He now challenges the district court's denial of his fourth 28 U.S.C. § 2255 motion, alleging that he was denied due process of law when the prosecution allegedly failed to turn over exculpatory evidence at his trial. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Beginning in 1981, Zack devised and carried out a scheme to siphon money tax-free from his business, the Zacova Tool and Die Company. He enlisted the help of his codefendants, William Vicary, James Hawreluk, and Kenneth Bourlier, to create and present false invoices to Zacova. The business would then issue checks for work that was never performed. Eventually, the checks were converted into cash, with Zack and his partner Lester Sova personally receiving 75 to 90 percent of the money. The other participants received only minor amounts. Through this scheme, Zack reduced the tax liability of his company and obtained tax-free cash for his personal use.

In October of 1986, the Internal Revenue Service (IRS) began to investigate. The government eventually apprehended Zack, Sova, and his codefendants. Government witnesses estimated that Zack and Sova fraudulently obtained over one million dollars through the scheme. The matter ultimately proceeded to trial. Sova, along with two other co-conspirators, testified against Zack, and voluminous documentary evidence was introduced.

On May 23, 1991, Zack was convicted on one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, on two counts of tax evasion in violation of 26 U.S.C. § 7201, and on seven counts of filing false tax returns, also in violation of 26 U.S.C. § 7201. He was sentenced to two terms of 46 months of imprisonment and seven terms of 24 months of imprisonment, all to run concurrently, in addition to 2 years of supervised release. His conviction and sentence were affirmed on direct appeal. *See United States v. Zack,* Nos. 91–2150, 92–1008, 1993 WL 8744 (6th Cir. Jan.19, 1993) (unpublished table decision).

Following his conviction, he filed two nearly identical civil lawsuits, alleging that the district court judge, the Department of Justice, an IRS agent, the Assistant United States Attorney, his former business associates, and several other private citizens had violated his right to due process of law and several of his statutory rights. He brought the suits under a multitude of

---

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

civil rights statutes and the Racketeer Influenced and Corrupt Organizations Act. These lawsuits alleged that the defendants conspired to destroy him and his family by giving false testimony at his trial, falsifying affidavits, and concealing tax records. *See Zack v. Sova,* No. 93–1989, 1994 WL 75898 (6th Cir. Mar.8, 1994) (unpublished table decision); *Zack v. Sova,* No. 93–1216, 1993 WL 386754 (6th Cir. Sept.30, 1993) (unpublished table decision).

Zack brought a motion to recuse the district court judge in 1994, alleging that the judge was personally prejudiced against him. In support of this motion, he filed an affidavit listing several issues that were raised in his direct appeal and in his post-conviction motions filed in the district court. These issues included the prosecution's purported fraud upon the court, a claimed misapplication of the sentencing guidelines, an alleged variance in the indictment, a charge that counterfeited government documents were admitted into evidence, a claim of perjured testimony by one of the prosecution's witnesses, and several allegations of ineffective assistance of counsel. The district court found that Zack's allegations lacked merit, both because he provided no factual support for his prejudice claim and because his other arguments relied on the bare assertions that he was convicted and that his post-trial motions were not decided in his favor. This court affirmed. *See United States v. Zack,* No. 94–1025, 1994 WL 198160 (6th Cir. May 18, 1994) (unpublished table decision).

While Zack's direct appeal was still pending in 1993, he filed his first motion to vacate his sentence, pursuant to 28 U.S.C. § 2255, and a motion for a new trial, pursuant to Fed.R.Crim.P. 33. The § 2255 motion alleged that his trial counsel had been ineffective, and the Rule 33 motion reasserted the ineffective-assistance-of-counsel claim, challenged the verdict on the basis that it went against the greater weight of the evidence, and claimed that it was based on perjured testimony. Both of these motions were denied by the district court and affirmed on appeal. *See Zack v. United States,* No. 92–2286, 1993 WL 64156 (6th Cir. Mar.9, 1993) (unpublished table decision); *United States v. Zack,* No. 93–1045, 1993 WL 206474 (6th Cir. June 14, 1993) (unpublished table decision).

In June of 1993, Zack filed his second motion to vacate, realleging the claims that he asserted in his previous motion for a new trial. The district court again denied the motion, and this court affirmed. *See Zack v. United States,* No. 93–2493, 1994 WL 284088 (6th Cir. June 23, 1994) (unpublished table decision). Zack's third motion to vacate was filed on July 22, 1995, challenging the accuracy of certain information contained in his presentence report. Again, the district court denied this motion and found that it constituted an abuse of the writ. *See Zack v. United States,* 915 F.Supp. 913 (E.D.Mich.1996). Zack did not appeal this ruling.

Less than one week after the denial of his third motion in March of 1996, Zack filed the current motion to vacate, alleging that the prosecution had failed to turn over exculpatory evidence at trial. Without ordering a response from the government, the district court denied the motion on April 12, 1996. The court concluded, pursuant to 28 U.S.C. § 1915(g), that the motion was frivolous because it was premised on legal theories that the court had repeatedly determined to be meritless in its previous rulings. Zack's arguments were found to be without factual basis and "utterly devoid of merit." The court order went on to state that Zack's "baseless crusade" demonstrated a "recalcitrance and contumacy that has [sic] no parallel" and amounted to an "implacable and unyielding

campaign of repetitive and duplicative filings." On that same date, the district court issued an order requiring Zack to seek written permission from the court before filing any new civil actions or pleadings in the Eastern District of Michigan.

Zack failed to file a timely notice of appeal from the April 1996 order because he did not receive a copy until after the deadline had passed. He then filed a motion for an extension of time to file pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure. Initially, the district court denied the motion, but this court reversed and remanded the issue for the district court to determine whether Zack was entitled to relief on the basis of excusable neglect. *See Zack v. United States,* 133 F.3d 451 (6th Cir.1998). Upon remand, the district court denied the motion as moot because Zack was no longer in custody at the time it was filed. This court, however, again reversed the district court and held that Zack was in custody for purposes of § 2255 because he was serving a term of supervised release when he filed the motion. *See United States v. Zack,* No. 98–1526, 1999 WL 96996 (6th Cir. Feb.1, 1999). On March 1, 1999, the district court granted the extension and Zack filed this timely appeal.

## II. ANALYSIS

### A. Standard of review

This court will not set aside the district court's denial of a successive petition for a motion to vacate a defendant's sentence unless it finds an abuse of discretion. *See, e.g., Moody v. United States,* 580 F.2d 238, 239 (6th Cir.1978). Because Zack filed his motion prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, pre-AEDPA law governs his entitlement to relief. *See Lindh v. Murphy,* 521 U.S. 320, 327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). To prevail under 28

U.S.C. § 2255, a movant must show a "fundamental defect" in his sentencing that "necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States,* 21 F.3d 107, 109 (6th Cir.1994) (internal citation omitted).

### B. The district court did not err in dismissing Zack's fourth motion to vacate his sentence

Zack contends that the district court abused its discretion when it dismissed his § 2255 motion as frivolous. He argues that the court should have addressed the merits of his claim or, at the very least, should have provided him with the opportunity to show cause why the successive motion did not constitute an abuse of § 2255 procedure. Rule 9(b) of the Rules Governing § 2255 Proceedings, however, authorizes a district court to dismiss a successive motion "if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules."

Zack's § 2255 motion maintained that the prosecution had failed to disclose exculpatory evidence at trial, thereby violating its obligation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady,* however, is only concerned with those cases where the government possesses information unavailable to the defendant, and its failure to disclose the information deprives the defendant of a fair trial. *See United States v. Mullins,* 22 F.3d 1365, 1371 (6th Cir. 1994) (holding that no *Brady* violation occurred when the government failed to disclose materials resulting from an interview with the defendant's colleague, because the

defendant was made aware of the information through newspaper reports). Reversal is only required, therefore, where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (internal quotation marks omitted).

■ Stated another way, the *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but *unknown to the defense.*" *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (emphasis added). This court concluded in *United States v. Clark,* 928 F.2d 733 (6th Cir.1991), that the government's failure to disclose potentially exculpatory information does not violate Brady "where a defendant *knew or should have known* the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source." *Id.* at 738 (internal citation and quotation omitted) (emphasis added).

■ In support of his motion, Zack attached a 286–page exhibit, allegedly demonstrating that he was, in fact, owed a refund from the government due to his accountant's errors in preparing his tax returns from 1985 to 1989. He argued that these exculpatory documents were within the government's possession at trial, but never turned over to him. Almost all of these documents, however, originally came from Zack himself. The government's failure to mention these documents, therefore, did not amount to a *Brady* violation. Zack has thus failed to show a constitutional violation that would merit relief under § 2255.

One week prior to oral argument, Zack's counsel filed a motion for leave to withdraw. Among their reasons for withdrawal, counsel cited Zack's demand that they "argue verbatim" and against their "professional opinion" several claims that they felt were not supported by the record. We granted the motion and permitted his new counsel to file a supplemental brief with the court. In support of his *Brady* violation claim, Zack's supplemental brief alleges that IRS agents caused him to file fraudulent tax returns. He argues that upon discovery of the fraud, the IRS forced accountants for the third-party corporations involved in the scheme to recharacterize the money Zack received as dividends rather than tax-free loans.

Because he claims that he was never informed of this change in accounting procedures, Zack asserts, in essence, that he is innocent of all tax fraud. He further claims that this newly discovered "evidence requires [him] to receive a new trial." Although creative, this reading is utterly implausible and without legal merit. By putting forth this novel claim in his supplemental brief six years after filing the underlying § 2255 motion, he fails to recognize that this appeal is based solely on the district court's denial of his fourth motion to vacate his sentence. "[I]ssues not presented to the district court but raised for the first time on appeal are not properly before the court." *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1488 (6th Cir.1991). This court has deviated from this general rule only in "exceptional cases or particular circumstances or when the rule would produce a plain miscarriage of justice." *Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir.1993) (internal citation and quotation marks omitted). Because there is nothing exceptional about Zack's circumstances that

would produce a plain miscarriage of justice, his claim is not properly before us.

Nevertheless, we note that the argument is unpersuasive. Zack has provided no legal support or factual basis for his assertions. Moreover, Section 316 of the Internal Revenue Code requires that corporate distributions be treated as dividends rather than loans if there is no genuine intent to repay the funds. *See* 26 U.S.C. § 316; *Alterman Foods, Inc. v. United States*, 505 F.2d 873, 877 (5th Cir. 1974) ("[T]he proper rule is that mere declarations by the parties that they intend a certain transaction to constitute a loan is insufficient if it fails to meet more reliable indicia of debt which indicate the intrinsic economic nature of the transaction.") (internal citation and quotation marks omitted).

Zack's own supplemental brief concedes that the money was received as part of a "fraudulent invoice scheme." He is thus foreclosed from arguing that he intended to repay the money received from the scheme or that he was entitled to tax-free treatment of the distributions. Essentially, his belated claim amounts to yet another example of his "implacable and unyielding campaign of repetitive and duplicative filings" that prompted the district court to order Zack in April of 1996 to cease filing new pleadings. He is therefore not entitled to relief under § 2255 on the merits of the *Brady* claim asserted in his supplemental brief.

The district court also found that because Zack could have raised his *Brady* claim in an earlier motion, the successive filing constituted an abuse of the writ. On appeal, Zack argues that the district court abused its discretion by not allowing him the opportunity to show cause for having failed to raise the claim earlier. Given that his third § 2255 motion had just been dismissed only one week earlier, however, and that the district court's order found the third motion to constitute an abuse of the writ, Zack was on notice that still further motions would have to show cause and prejudice for not raising all claims at one time. *See McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (holding that "[t]o excuse [the defendant's] failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom").

Zack now maintains that he had cause for not raising all of his motions in one "neat package" because (1) his files and records were scattered after his conviction, (2) his wife could not help him locate the records due to her illness, (3) he lacked any formal legal training and was proceeding without counsel, and (4) his incarceration exacerbated the challenges of gathering these documents. The Supreme Court made clear in *McCleskey*, however, that a movant must show that some external impediment, such as governmental interference or the reasonable unavailability of the factual and legal basis for the claim, prevented the claim from being raised earlier. *See McCleskey*, 499 U.S. at 497, 111 S.Ct. 1454. Cause is based on the principle that a movant must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first motion. *See id.* at 498, 111 S.Ct. 1454. "Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." *Id.*

None of the reasons Zack advances constitute "cause" as defined in *McCleskey*. Difficulty in accessing records does not rise to the level of an "external factor" that would have prevented him from presenting his claims in his initial motion to vacate. *See Andiarena v. United States*, 967 F.2d 715, 718–19 (1st Cir.1992) (holding that petitioner's inability to access trial tran-

scripts that were unnecessary to his claim did not amount to "cause" when denying his second § 2255 petition to the court). "[I]f other known or discoverable evidence could have supported the claim in any event," the fact that Zack did not possess certain evidence fails to establish cause for his failure to raise his *Brady* claim in an earlier motion. *McCleskey*, 499 U.S. at 497, 111 S.Ct. 1454. He should, after all, have been aware of his own documents from the very beginning.

■ Moreover, in § 2255 proceedings, there is no right to counsel, *see Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), and the abuse-of-the-writ doctrine applies without regard to whether the petitioner was represented by counsel. *See Miller v. Bordenkircher*, 764 F.2d 245, 251 (4th Cir. 1985) ("Such factors as ignorance and unfamiliarity with the law ... do not inevitably insulate a prisoner from a finding of writ abuse."). Finally, his inability to demonstrate a *Brady* violation prevents him from arguing that the district court's denial of his motion resulted in a miscarriage of justice.

Because Zack is unable to articulate the factual basis for finding a constitutional violation on which his § 2255 motion could be granted, or to show cause for failing to raise this claim in his direct appeal or in his three previous post-judgment motions, the district court did not abuse its discretion when it dismissed the motion. Zack is therefore not entitled to have yet another bite at the apple.

## III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.