CLAY, Circuit Judge,
dissenting.
Defendant Abel Martinez Tavera and his co-defendant Placido Ventura Mendoza were together during the commission of the crime for which Defendant was convicted. Other than Defendant himself, Mendoza was the only witness who could have corroborated Defendant’s version of *715 events, and Defendant admits that he knew as much. But Defendant never attempted to contact Mendoza, interview him, or call him as a defense witness. Binding precedent in this Circuit holds that, under these circumstances, the government does not violate Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), if it fails to disclose a statement made by a non-testifying witness such as Mendoza. See Benge v. Johnson, 474 F.3d 236, 244 (6th Cir.2007); United States v. Corrado, 227 F.3d 528, 538 (6th Cir.2000); United States v. Mullins, 22 F.3d 1365, 1371-72 (6th Cir.1994); United States v. Todd, 920 F.2d 399, 405 (6th Cir.1990). Although this rule may be misguided, as the majority insists that it is, I can find no meaningful way to distinguish these precedents. Because these prior holdings are binding on this panel, I would affirm Defendant’s conviction.
The majority seems to acknowledge the precedential nature of these Sixth Circuit cases, see Maj. Op. at 711-12, but rather than apply them, argues that they were essentially overruled by the Supreme Court’s decision in Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). However, Banks does not purport to upset the rule announced in our Circuit’s cases, nor has any court ever held that it did so. Rather, Banks stands for the uncontroversial proposition that a prosecutor cannot lead a defendant to believe that he possesses all relevant information when, in fact, he is mistaken about significant details that only the government knows. See id. at 693-96, 124 S.Ct. 1256. I have favored applying the principle in Banks whenever a prosecutor falsely represents that all favorable information has been disclosed because, in those situations, the defendant is effectively prevented from investigating on his own. See Bell v. Bell, 512 F.3d 223, 241-42 (6th Cir.2008) (Clay, J., dissenting). This case presents quite a different situation. The government in this case made no representations to Defendant, and none of the government’s conduct could have led Defendant to believe that everything in its files had been disclosed. Under these circumstances, our precedents tell us that Brady is not violated.
If we were writing on a blank slate or applying Brady without considering the subsequent controlling case law of the Sixth Circuit, the majority’s holding might well be sustainable. However, Brady is not the only star in the constellation of cases that we are obliged to consider and faithfully apply. Even if many of the controlling cases are unwise or ill-conceived in light of the fairness concerns that underpin Brady, we are no less bound to adhere to them. A prior published panel decision “remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.” Rutherford v. Columbia Gas, 575 F.3d 616, 619 (6th Cir.2009). Furthermore, “[i]n the Sixth Circuit, as well as all other federal circuits, one panel cannot overrule a prior panel’s published decision.” United States v. Washington, 127 F.3d 510, 517 (6th Cir.1997).
In Brady itself, the state prosecutor, in response to a specific request for information, misled the defendant by disclosing some of his co-defendant’s pretrial statements while withholding the co-defendant’s confession to the murder for which the defendant was ultimately convicted. Brady, 373 U.S. at 84-87, 83 S.Ct. 1194. The Supreme Court held that the prosecutor’s suppression of the evidence violated the defendant’s due process rights. Id. at 87, 83 S.Ct. 1194. The Court later held, in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), that *716 some evidence otherwise “unknown to defense counsel” must be disclosed to the defendant when no request has been made, but it limited that holding to evidence “obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request.” Id. at 110, 96 S.Ct. 2392.
The courts of appeals, including the Sixth Circuit, have attached an additional gloss to the Brady rule. “ ‘[T]here is no Brady violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source.’ ” Jones v. Bagley, 696 F.3d 475, 487 (6th Cir.2012) (quoting Carter v. Bell, 218 F.3d 581, 601 (6th Cir.2000)); see also Doan v. Carter, 548 F.3d 449, 460 (6th Cir.2008) (holding that the failure to disclose evidence known to the defense “cannot form the basis of a Brady violation”). To be entitled to a new trial under Brady, the defendant must show that the suppressed exculpatory evidence “could not have been discovered earlier with due diligence.” Corrado, 227 F.3d at 538.
Rightly or wrongly, this Court has applied this diligence requirement in circumstances like those present in this case: where a defendant knows of the existence and relevance of a non-testifying witness but fails to contact either the witness or the government. In Benge v. Johnson, a habeas case, a state defendant charged with murder argued that the state had violated Brady by failing to turn over potentially exculpatory statements made to a grand jury by a witness who was never called by the state to testify at trial. Benge, 474 F.3d at 243. This Court disagreed, finding that because the defendant and the witness were together for the relevant time period, the defendant knew all the information that could have led him to the witness on his own. Id. Benge is largely indistinguishable from this case. In this case, Mendoza, a non-testifying witness, made potentially exculpatory statements to the government. Although Defendant did not know of the statements themselves, he admits that he “was obviously aware of the substance of Mendoza’s statements” because they were together during the commission of the crime. (Appellant’s Reply Br. 2.) But Defendant made no inquiries of either Mendoza or the government.
Similarly, in United States v. Corrado, this Court held that the government was not required to disclose statements made by non-testifying witnesses when the defendant “made no showing that he would have been unable to identify, locate, and interview these individuals through reasonable efforts on his own part.” Corrado, 227 F.3d at 538; accord Mullins, 22 F.3d at 1371-72 (finding no Brady violation when the government did not disclose a witness’s statement because the defendant was aware of the content of the statement); Todd, 920 F.2d at 405 (finding no Brady violation where the defendant was aware that witnesses might have had exculpatory information). Like the majority, I question the wisdom of imposing such investigatory burdens on criminal defendants, but the import of these cases is nonetheless clear: a defendant who knows that a witness possesses potentially exculpatory information must attempt to take advantage of that knowledge.
Other circuits have similarly held that Brady is not implicated when a defendant is aware of a witness’s potentially exculpatory knowledge but fails to take any steps to interview the witness or obtain any of their prior statements. See United States v. Bond, 552 F.3d 1092, 1096 (9th Cir.2009) (“[Wjhere a witness is involved the government is not required to make his state *717 ment known to a defendant who is on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony he might furnish.” (internal quotation marks and alterations omitted)); Pondexter v. Quarterman, 537 F.3d 511, 526 (5th Cir.2008); Fullwood v. Lee, 290 F.3d 663, 686 (4th Cir.2002); Wright v. Hopper, 169 F.3d 695, 702 (11th Cir.1999); United States v. Lockhart, 956 F.2d 1418, 1425-26 (7th Cir.1992); United States v. Hicks, 848 F.2d 1, 3-4 (1st Cir.1988); United States v. LeRoy, 687 F.2d 610, 618-19 (2d Cir.1982); see also Coe v. Bell, 161 F.3d 320, 344 (6th Cir.1998) (“Brady obviously does not apply to information that is not wholly within the control of the prosecution.”)
I agree with the majority that, in many cases, the rule imposed by our precedents will place an unfair burden on defendants to conduct their own investigations and relieve prosecutors of the disclosure obligations that Brady may have originally envisioned. But we must apply the law as it is, not as we wish it were. The Supreme Court has repeatedly told us that even though a broad criminal discovery regime “might be desirable, the Constitution surely does not demand that much.” Agurs, 427 U.S. at 109, 96 S.Ct. 2392; see also Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) (“There is no general constitutional right to discovery in a criminal case.”). The law as it stands does not support the result reached by the majority in this case.
The majority goes on to find that even if Mendoza had been approached by Defendant, Mendoza was unlikely to have talked to him, much less testified on his behalf. The majority further contends that had he been subpoenaed to testify, Mendoza likely would have invoked his right against self-incrimination. Therefore, the argument goes, Mendoza’s statements were de facto unavailable, and the government was required by Brady to disclose them. This argument appears altogether reasonable, and it is an approach I would favor if asked to decide the issue without being circumscribed by existing legal precedent. A key promise of Brady is to remedy the persistent imbalance in resources and access that favors the prosecution over the defense, and for the courts to perpetuate that imbalance — whether directly caused by the government or not — seems to abdicate Brady’s promise.
However, this sensible argument is once again contradicted by binding precedent. In Benge, the witness with potentially exculpatory information simply refused to speak with the defendant’s attorney. Benge, 474 F.3d at 244. This Court held that under such circumstances, the government does not violate Brady by not disclosing the witness’s prior statements. Id. The witness’s “refusal to speak with counsel for [the defendant] did not result from any action by the state.... No matter how unfortunate for [the defendant], this was simply not the prosecutor’s doing.” Id.; see also United States v. Cheatham, 899 F.2d 747, 753 (8th Cir.1990) (“No constitutional violation occurs when a witness chooses of her own volition not to be interviewed by the defense.”).
In Mullins, a non-testifying witness had been interviewed by the FBI, and the government admitted that it possessed a summary of that interview which it did not disclose to the defendant. Mullins, 22 F.3d at 1371. The defendant knew that the witness may have been able to contradict some of the government’s evidence, and he asked the witness if he would testify. The witness told the defendant that he would not voluntarily testify, and if subpoenaed, would assert his Fifth Amendment rights. Id. at 1371 n. 2. Even though the witness was practically inacces *718 sible to the defendant, this Court found that the government had not violated Brady by failing to disclose the witness’s prior statement because the substance of the witness’s knowledge was known to the defendant. Id. at 1372. Under Benge and Mullins, the reason that a witness refuses to speak with the defendant thus appears irrelevant. Unless the witness’s unavailability is somehow caused by or attributable to the government, Brady is not implicated because evidence has not been “suppressed.” This rule seems quite ill-conceived, but it binds us nonetheless.
When a defendant knows of the existence of a witness with potentially exculpatory information, our cases appear to require some act of “suppression” by the government. A defendant’s reasonable reliance on an “open file” policy, for example, would suffice to establish government suppression because it would constitute a representation by the government that all favorable information had been disclosed. See Strickler v. Greene, 527 U.S. 263, 283-85, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Similarly, the government cannot lead a defendant to believe that he possesses all relevant information when, in fact, he is mistaken about significant details like whether a government witness was a police informant. See Banks, 540 U.S. at 693-94, 124 S.Ct. 1256 (“A rule thus declaring ‘prosecutor may hide, defendant must seek,’ is not tenable in a system constitutionally bound to accord defendants due process.”). Had Defendant taken any steps to pursue the information he admittedly possessed about Mendoza’s identity and his potentially exculpatory knowledge, the government would have been required to respond truthfully. Because Defendant did nothing, our precedents in Benge and Mullins absolve the government of responsibility.
Had the government concealed evidence after a specific request or falsely represented that it had disclosed all favorable evidence, a new trial would be warranted without question. In the absence of contrary controlling case law, I would favor an extension of these principles to this very case. Prosecutors should be obliged to turn over evidence in their possession that is practically unavailable to the defendant, even if the government did not cause the evidence to be unavailable. Such a rule is consistent with Brady’s “overarching concern that the defendant receives a fair trial” and the Supreme Court’s consistent attempts to discourage prosecutors from engaging in “unsavory gamesmanship” when the defendant’s liberty is at stake. See Bell, 512 F.3d at 240, 244 (Clay, J., dissenting). Nevertheless, it is up to this Court sitting en banc or the Supreme Court, not this panel, to decide whether the applicable Sixth Circuit case law has unduly strayed from the Supreme Court’s holding in Brady.
Brady’s disclosure requirement is undoubtedly among the bedrock principles of our criminal justice system. Although subsequent cases have not adequately respected Brady’s commitment to fundamental fairness, these cases control our decision. Notwithstanding the majority’s view of what Brady should have required in this case, our controlling precedents tell us that the evidence in question was not “unavailable” within the meaning of Brady because Defendant was aware of Mendoza’s potentially exculpatory knowledge but failed to take any steps to interview him or obtain any of his prior statements. Recognizing that we are bound by this case law, we are required to affirm Defendant’s conviction and sentence. Therefore, I respectfully dissent from the Court’s judgment.