61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul E. REED, Defendant-Appellant.
 No. 94-6270.
 United States Court of Appeals, Sixth Circuit.
 July 20, 1995.
 
 Before: SILER and DAUGHTREY, Circuit Judges; ZATKOFF, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Paul E. Reed appeals the sentence imposed pursuant to a plea agreement whereby he pled guilty to conspiracy to kidnap for the purposes of murder. Reed argues that the district court erred by not departing downward and by not finding that the government's prosecution decisions violated his right to equal protection under the law. Based on the following discussion, we affirm.
 
 I.
 
 2
 In 1992 and 1993, defendant Paul Reed and his wife, Trena Reed, organized and managed a burglary and theft ring which operated in Kentucky and Ohio. Several co-conspirators were involved including Christopher Lee Pettit, Perry Sams, Allen Smith, and a male juvenile.
 
 
 3
 During the investigation of these offenses, Christopher Lee Pettit, 18, became an informant for the Frankfort, Kentucky, Police Department and the Franklin County Sheriff's Office. Pettit's cooperation led to a state court indictment charging Trena Reed and defendant Paul Reed with the offense of receiving stolen property. The trial was scheduled to begin in Frankfort on June 14, 1993.
 
 
 4
 In the discovery materials, Paul and Trena Reed found a statement made by Christopher Pettit which implicated the two of them in the criminal activity. Consequently, Trena formulated a plan to get rid of Pettit prior to trial. After an initial attempt was aborted, Paul Reed contacted Pettit and indicated that he and the juvenile wanted Pettit to travel to Ohio to "party" for a few days at the residence of Pettit's relatives. Pettit agreed. They left Kentucky around June 10.
 
 
 5
 While traveling north in Ohio, Pettit pulled the car over at the request of the juvenile who indicated that he needed to relieve himself. All three individuals exited the car, and the juvenile handed Reed a .22 caliber revolver, which belonged to the Reeds and had been at their house prior to the murder. The victim tried to escape by running down the highway, but Reed fired six shots and hit the victim four times.
 
 
 6
 At this point, Reed handed the gun back to the juvenile who reloaded the weapon. Reed then shot Pettit four additional times at close range. The juvenile then indicated that he saw the victim's foot move so he cut Pettit's throat with a pocket knife. Reed and the juvenile dragged the victim's body into some weeds and attempted to cover the body with a branch. Back in Kentucky, they threw the firearm into the Kentucky River.
 
 
 7
 They returned to the Reed home around 6:00 a.m. on June 10, 1993. Trena asked if Pettit was dead, and Paul informed her of the details of the murder. She then helped them clean blood from their hands and fingernails, and advised them to burn their clothes after noticing blood on Paul's jacket. Later in the day, Trena took the car and had it thoroughly cleaned. She then traveled to Lexington, along with Paul, the juvenile, and two others, where they purchased new tires in attempt to avoid any tracking from the murder scene. That afternoon, Pettit's body was found by an Ohio highway road crew.
 
 
 8
 Paul and Trena Reed were later indicted in federal court. Count one charged that the Reeds conspired to kidnap for the purposes of murder in violation of 18 U.S.C. Sec. 1201(c). Count two charged them with the substantive offense of kidnapping in violation of 18 U.S.C. Secs. 1201(a)(1) and 2(a) & (b). Counts three and four charged Paul Reed with using and carrying a firearm during a crime of violence in violation of 18 U.S.C. 924(c)(1), and possessing a pistol by a convicted felon in violation of 18 U.S.C. Secs. 922(g)(1) and 924.
 
 
 9
 Pursuant to a written plea agreement, Paul Reed pled guilty to count one with a 324 month term of imprisonment. Trena Reed later entered into a plea agreement whereby she consented to the dismissal of the indictment in exchange for the filing of an information charging her as an accessory after the fact. Her sentencing range was between 78 and 97 months.
 
 
 10
 Prior to sentencing, Paul Reed moved for a downward departure seeking a sentence near Trena's guideline range. Judge Hood denied this motion and sentenced him to 324 months of imprisonment and five years of supervised release. Trena was later sentenced to 97 months.
 
 II.
 
 11
 Reed argues that the district court erroneously considered his murder of Eric Pettit when it refused to depart from the Guidelines. He contends that the court's reliance on the actual murder is improper because (1) that conduct had already been taken into consideration,[1] and (2) the offense of conviction was not murder, but, rather, conspiracy to kidnap for the purpose of murder. He also argues that the court should have departed to reconcile his sentence with that of his wife, Trena Reed.
 
 
 12
 A refusal to depart downward "is not reviewable on appeal when the district court properly computes the Guidelines range, imposes a sentence that is not illegal or did not result from an incorrect application of the Guidelines range, and is not unaware that it had discretion to depart from the Guidelines range." United States v. Vincent, 20 F.3d 229, 239 (6th Cir.1994) (citing United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990)).
 
 
 13
 The district court properly computed Reed's sentence pursuant to the Guidelines, and, moreover, recognized its authority to depart downward.[2] Accordingly, we have no jurisdiction to review the district court's discretionary refusal to depart.
 
 III.
 
 14
 Defendant also contends that the district court erred in not finding that the government's plea agreement decisions concerning him and his wife violated his equal protection rights. This argument is without merit.
 
 
 15
 The government is afforded broad discretion in determining "who will be charged and with what crime." United States v. Mullins, 22 F.3d 1365, 1373 (6th Cir.1994) (citing Wayte v. United States, 470 U.S. 598, 607 (1985)). Prosecution decisions will be upheld under the equal protection clause unless they are "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." Wayte, 470 U.S. at 608 (citations and quotation marks omitted). Reed has failed to show that the prosecution was motivated by any invidious considerations, and, hence, the court committed no error.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defendant seems to confuse appellate review of a decision to depart with appellate review of a decision not to depart. For example, he cites Williams v. United States, 503 U.S. 193 (1992), for the proposition that it is improper for a trial court to consider a factor in its guideline departure decision when such factor was already considered in determining defendant's base offense level. Unlike the instant case, Williams involved a district court's decision to depart from the guidelines
 
 
 [2]
 Judge Hood stated, "I understand the power that I have under 5K2 and ... the Sixth Circuit [United States v.] Nelson [918 F.2d 1268 (6th Cir.1990) ] case...." Although the court may have interpreted its power to depart under Nelson as broader than it actually is, see United States v. Parker, 912 F.2d 156 (1990) (holding that court may not make downward departure for sole purpose of harmonizing sentences), the defendant obviously could not be prejudiced by such an interpretation, and, thus, we have no reason to address the issue of disparate sentences