**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0461n.06
Filed: June 3, 2005

No. 03-2546

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **v.** | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| AMONT JEFFERSON, | ) | OPINION |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |
| | ) | |

BEFORE:    **COLE and GIBBONS, Circuit Judges, and SCHWARZER,**[*] **Senior District Judge**

**PER CURIAM.** Amont Jefferson appeals his conviction, after a jury trial, of bank robbery under 18 U.S.C. §§ 2 and 2113(a). He also appeals the denial of his motion for a new trial and his sentence of six years' imprisonment. Jefferson argues that the government's failure to disclose the report of a witness interview violated the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), which established that the government may not suppress material evidence that is favorable to the accused. The district court held a hearing and determined that even if the interview report was deliberately withheld, there was no constitutional error because the evidence would not have affected the outcome of the case. The court therefore denied Jefferson's motion for a new trial.

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

For the reasons discussed below, we affirm Jefferson's conviction and the denial of his motion for a new trial, but remand for resentencing.

## BACKGROUND

On September 18, 2001, Jefferson, Arthur Bowlson, Robert Moore, and Marco Houston met at the house of Brent Crowell to plan a bank robbery, which they carried out later that day at a branch of National City Bank in St. Clair Shores, Michigan. Jefferson's job was to enter the bank to see how many people were inside the bank and whether the tellers were protected by bulletproof glass. To do this, Jefferson entered the bank and pretended to be interested in opening a bank account. The bank surveillance camera photographed Jefferson standing at the teller window, and the teller recorded information about his inquiry. Jefferson then left the bank and described the interior to Bowlson, who entered the bank with his face concealed and a gun in his hand and obtained over $12,000 in cash from the tellers' drawers. After Bowlson left the bank, he and Moore fled a short distance and were apprehended. Jefferson and Houston escaped safely but were later arrested.

Jefferson was indicted for bank robbery and carrying a firearm during a crime of violence. His first trial resulted in a not guilty verdict on the firearm charge and no verdict on the bank robbery charge. In his second trial, he was convicted of bank robbery and sentenced to six years' imprisonment.

During Jefferson's sentencing hearing, defense counsel learned that the FBI had interviewed Crowell, whose statement contradicted some of the testimony of Moore, the principal witness against Jefferson. Specifically, Jefferson argues that Crowell's statement contradicted Moore's

testimony by indicating that the men arrived and left in only one car, rather than two; that the men left and brought back breakfast from McDonald's, rather than raiding Crowell's refrigerator; and that there was no gun in Crowell's house for the men to have taken. Jefferson moved for a new trial on the ground that the government's failure to disclose the information regarding the Crowell interview in response to discovery requests was a *Brady* violation. After a hearing, the trial court held that the evidence would not have affected the outcome of the case and denied the motion. The court thereafter sentenced Jefferson to six years' imprisonment. Jefferson timely appealed.

## STANDARD OF REVIEW

"The decision whether to grant or to deny a motion for a new trial rests within the district court's sound discretion." *United States v. Braggs*, 23 F.3d 1047, 1050 (6th Cir. 1994) (citing *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991)). "[T]his court reviews the denial of a motion for a new trial based on newly discovered *Brady* evidence for an abuse of discretion." *United States v. Ross*, 245 F.3d 577, 584 (6th Cir. 2001) (citation omitted).

## DISCUSSION

## I. *BRADY* VIOLATION

The Supreme Court recently summarized the three components of a "true" *Brady* violation, stating that "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Demonstrating prejudice requires the defendant to show that the suppressed

favorable evidence at issue is material. *Id.* at 282. Favorable evidence is material for *Brady*

purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different." *Id.* at 280; *Kyles v. Whitley*, 514 U.S. 419,

433-34 (1995); *Castleberry v. Brigano*, 349 F.3d 286, 291 (6th Cir. 2003) (citing *United States v.*

*Bagley*, 473 U.S. 667, 682 (1985)). In this case, the evidence is not material nor favorable to

Jefferson and, in any event, was not suppressed by the government.

>    *A.      The Evidence Is Not Material*

Jefferson claims that because Crowell's testimony contradicts some of Moore's testimony,

the withholding of the interview report constituted a *Brady* violation. Specifically, Jefferson argues

that in light of Crowell's statement, the jury could have inferred that Moore was lying about

significant events leading up to the robbery and could have concluded that he was not credible

regarding the information he provided about Jefferson's involvement in the robbery.

While Crowell may have contradicted Moore on some points–namely, what the defendants

ate while they were at his house, which particular cars they used, and whether there was a gun in the

house–Crowell's testimony would have contradicted Jefferson's defense theory in more significant

respects. Jefferson testified that he did not know Crowell or Bowlson and that he was not with

Moore or Bowlson on the day of the robbery. Crowell's testimony that Jefferson was in the

company of the other defendants on the day of the robbery would only have enhanced the

government's case. The type of cars at Crowell's house, what the men ate for breakfast, and whether

there was a gun at Crowell's house have little relevance to the case against Jefferson.

Jefferson was photographed in the bank less than twenty minutes before Bowlson robbed it.

Jefferson's girlfriend verified that the man in the surveillance photo was Jefferson. He gave a false name and pretended to be interested in opening an account. The Sable in which Bowlson made his getaway was rented to Jefferson's girlfriend. Additionally, Moore was extensively cross-examined about his prior convictions, the fact that he lied to his common-law wife about his girlfriend, the details of his cooperation agreement with the government, and even whether he was lying about where the group had breakfast that day. As the district court noted at the sentencing hearing, the defense did a good job of impeaching Moore at the trial. Details about cars used or where the men ate breakfast would not have changed the outcome of the jury verdict, and whether there was a firearm at Crowell's house is irrelevant because Jefferson was acquitted of the firearm charge in his first trial.

In light of the great weight of evidence against Jefferson that would result from Crowell's testimony, the slight impeachment value of the testimony, and the fact that Moore had already been extensively cross-examined with impeaching evidence, the district court did not abuse its discretion in holding that the outcome would not have been different if the report of Crowell's testimony had been known to the defense.

### B. *The Evidence Was Not Suppressed*

In any case, there was no *Brady* violation because the information that Crowell provided to the FBI in his interview was not suppressed. *Brady* holds that the prosecution may not suppress favorable material evidence. 373 U.S. at 87. But evidence is not "suppressed" when it is readily available to the defendant from other sources. *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994); *see also United States v. Corrado*, 227 F.3d 528, 538 (6th Cir. 2000) (stating that evidence

need not be disclosed if the defense could have located and interviewed witnesses through a reasonable effort). We have held that no *Brady* violation exists "where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information." *United States v. Cottage*, 307 F.3d 494, 499-500 (6th Cir. 2002) (quoting *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (internal citations omitted)).[1]

In this case, Crowell was listed as a government witness in the first trial, although he never testified. Moreover, Jefferson knew long before the trial that the government's theory included the facts surrounding the meeting of the four alleged bank robbers at Crowell's house on the morning of the robbery. Moore testified at Jefferson's first trial that Jefferson was with the other three robbers at Crowell's house on the morning of the robbery. Crowell's potential testimony regarding the events of that morning would seem to be of great interest to the defense, yet there is no indication that defense counsel pursued this evidence. Furthermore, there is nothing to suggest that Crowell was not accessible for questioning by defense counsel. Crowell was not in custody or otherwise in the control of the government. And there is no indication that Crowell refused to speak with defense counsel. *See Strickler*, 527 U.S. at 285 & n.27 (holding that records and notes of interviews were suppressed because the witness refused to speak to defense counsel before trial);

---

[1]In *Mullins*, this court held that the FBI did not violate due process under *Brady* by failing to disclose a summary of a witness interview conducted by the FBI because the defendant knew, or was aware of, the information that the witness provided to the FBI. 22 F.3d at 1371-72. Similarly, here, Jefferson could have located and interviewed Crowell with a reasonable effort, thus permitting him to take advantage of any exculpatory information Crowell might have to offer. Therefore, the evidence at issue here was not suppressed. *See Cottage*, 307 F.3d at 499-500; *Corrado*, 227 F.3d at 538.

*United States v. Frost*, 125 F.3d 346, 381 (6th Cir. 1997) (finding that the government had suppressed part of the statement of a witness who refused to be interviewed by the defense). Nothing prevented defense counsel from calling Crowell as a witness or interviewing him to see whether he would contradict Moore's testimony regarding the events at his house. Jefferson's counsel did not need to read a report of an FBI interview with Crowell to discover whether Crowell could provide any exculpatory evidence.

Because the interview report was neither material nor suppressed, there was no *Brady* violation.

## II.    SENTENCING

Jefferson originally challenged his sentence on the basis that the federal Sentencing Guidelines are unconstitutional in their entirety or, alternatively, that he was erroneously assessed two additional points on his offense level based on facts found by the sentencing judge rather than by the jury, in violation of his Sixth Amendment rights.[2] We need not reach the issue of whether there was a Sixth Amendment violation because *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005), dictates that the remedial interpretation of the Sentencing Guidelines set forth in *United States v. Booker,* 125 S. Ct. 738 (2005), must be applied to all cases on direct review, even to those

---

[2]Specifically, the district court found that Jefferson committed perjury at trial and therefore added an obstruction of justice enhancement. At trial, Jefferson testified that he did not participate in the robbery, that he did not go to Moore's house on the day of the robbery, that he did not even know who Crowell was, that he went to the bank only to open an account for Houston, and that he did not even know the robbery had occurred until two weeks later. The court determined, as the government now argues, that the jury's verdict established that Jefferson committed perjury because the jury could not have believed these statements without acquitting Jefferson.

defendants "who had been sentenced under the mandatory Guidelines without suffering a Sixth Amendment violation." *Barnett*, 398 F.3d at 524 (citing *Booker*, 125 S. Ct. at 765). However, a defendant must raise this argument on appeal to obtain relief. *United States v. Oliver*, 397 F.3d 369, 377 n.1 (6th Cir. 2005) (noting that supplemental authority letters submitted prior to and subsequent to oral argument were sufficient to raise *Booker* issue on appeal).

In his brief, Jefferson based his argument regarding his sentence on *Blakely v. Washington*, 124 S. Ct. 2531 (2004) (holding that judges may not enhance sentences based on facts not admitted by defendant or found by a jury), contending that his Sixth Amendment rights were violated. However, prior to oral argument, Jefferson submitted a supplemental citation of authority on the sentencing issue, citing *Booker*, 125 S. Ct. 738. Jefferson now argues that his sentence was imposed in error because the district court sentenced him under the belief that the Guidelines were mandatory. Jefferson's supplemental citation of authority was sufficient to raise on appeal Jefferson's argument that his sentence violated *Booker*. *See Oliver*, 397 F.3d at 377 n.1. However, because Jefferson did not raise this issue at sentencing, we review for plain error. *Id.* at 377.

The district court erred in treating the Guidelines as mandatory. *Barnett*, 398 F.3d at 525. The error was plain because *Booker* effectuated a clear and obvious change in the law by making the Guidelines advisory. *Id.* at 526. Prejudice may be assumed because the court would have been free to impose a lower sentence under an advisory Guidelines regime. *Id.* at 527-28. In this case, prejudice is also apparent because in adding points due to obstruction of justice, the court stated:

> [A]s a matter of philosophy or personal belief, I might come out with a different result than the U.S. Supreme Court did in terms of allowing more points for exercising the constitutional right to testify on your own behalf. But where – I am

> basically under the supervision of the Supreme Court, I have to follow their precedent, and then the only question becomes is that substantial evidence is in support of finding what the guidelines calls an obstruction of justice based on perjury, and I'm making that finding.

Finally, exercising discretion to correct the plain error is appropriate in this case where it is impossible to tell if the judge would have given the same sentence under the new regime. *Id.* at 529-30. "We would be usurping the discretionary power granted to the district courts by *Booker* if we were to assume that the district court would have given [the defendant] the same sentence post-*Booker*." *Oliver*, 397 F.3d at 380 n.3.

We therefore remand this case in light of *Booker* for resentencing under an advisory Guidelines regime. *Barnett*, 398 F.3d at 531; *see also United States v. Howard*, 2005 WL 612121 at *2 (6th Cir. Mar. 17, 2005) (remanding for resentencing under *Booker and Barnett* absent a Sixth Amendment violation).

**REMANDED** for resentencing.