NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0517n.06
Filed: July 25, 2006

No. 05-3833

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RYAN LEE, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GILMAN and SUTTON, Circuit Judges; WISEMAN, District Judge.[*]

SUTTON, Circuit Judge. Ryan Lee principally challenges the district court's denial of his claim that the government violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Because *Brady* does not require a new trial when the defendant originally supplied the "non-disclosed" evidence to the government and because his other arguments lack merit, we affirm.

I.

On January 16, 1997, in Columbus, Ohio, Ryan Lee and two accomplices stopped an armored truck at gunpoint and stole $16,000 from the truck. After learning from news reports that

_____

[*] The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

his car was spotted leaving the scene of the crime, Lee left his accomplices, drove to the parking lot of an Odd Lots store and called 911. When the police arrived, Lee reported that he had been sitting in his car in a parking garage reviewing resumes when three masked men, two of them armed, ordered him into his trunk. The men eventually abandoned his car, Lee explained, after which he escaped from the trunk.

As more evidence came to light, the police began to suspect that Lee had taken part in the robbery. On January 10, 2001, Lee was indicted for the crime.

On April 12, 2002, a jury convicted Lee of conspiracy to commit robbery, *see* 18 U.S.C. § 1951, convicted him of making a false statement to law-enforcement officers, *see id*. § 1001, and acquitted him of carrying a firearm during a crime of violence, *see id*. § 924. The verdict was short-lived, however. After determining that the government had suppressed material exculpatory evidence—methods of escaping from the kind of car Lee was driving (a Lexus)—the district court granted Lee's motion for a new trial.

Lee represented himself at the second trial with the assistance of standby counsel. During the trial, Lee cross-examined FBI Agent Harry Trombitas about Trombitas's testimony that he had called the Ohio Department of Youth Services to check Lee's claim that Lee had been planning to apply for a job position there. In doing so, Lee learned that Trombitas had spoken with someone at the Department who "knew who you [Lee] were," JA 287, a person whose name Lee had provided to Trombitas, *see* JA 289 (Trombitas trial testimony) ("I think you [Lee] gave me a name of

someone that knew you over there."); *id.* (Lee questioning Trombitas) ("Didn't I give you the name of the person that I interviewed with . . . . Agent Trombitas?").

On November 24, 2003, the jury convicted Lee of conspiring to commit a bank robbery and making a false statement to federal officers, the same two counts on which he had been convicted before. One month later, Lee returned to the *Brady* well, arguing that he should receive a third trial because the government had suppressed evidence of "the name of an alibi witness employed at the Department of Youth Services." JA 99. The district court denied the motion, observing that "*Brady* is concerned only with cases in which the government possesses information which the defendant does not." D. Ct. Op. at 11 (quoting *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000)). "If, as indicated by Mr. Lee's questioning, . . . he gave Agent Trombitas the name of the [Department] employee he saw on the morning of the robbery, that name was obviously known to Mr. Lee," defeating the suggestion that the government suppressed the information. *Id.* at 11–12.

The court also reasoned that the evidence would not have been favorable to Lee. "[T]here is absolutely no evidence in the record to support Mr. Lee's claim that he went to [the Department] on the morning of January 16, 1997," and thus no alibi for this evidence to corroborate. *Id.* at 10. Even if there had been an alibi, the court observed, "there is no evidence that this individual could verify that Mr. Lee was at [the Department] on the morning of January 16, 1997." *Id.*

Finally, the court concluded that Lee had not shown prejudice. Although "very strong evidence" established Lee's guilt, the court considered of even "greater importance" the fact that,

"even if Mr. Lee did drop a resume at [the Department] on the morning of January 16, 1997—an act that would have taken no more than a few minutes of his time since the agency is located across from the parking garage—this would not provide Mr. Lee with a strong alibi for the conspiracy charge." *Id*. at 16.

## II.

"To establish a violation of *Brady*, the petitioner has the burden of establishing [1] that the prosecutor suppressed evidence; [2] that such evidence was favorable to the defense; and [3] that the suppressed evidence was material." *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). According to Lee, the prosecution did not disclose evidence "concerning [Lee's] contact at the Department of Youth Services." Lee Br. at 12. That evidence, says Lee, would have shown that Agent Trombitas had spoken on the phone with someone at the Department who "knew who [Lee was]," and that knowledge would have supported an alibi defense that he was at the Department on the morning of the robbery. JA 287.

As the district court ably demonstrated, this contention contains a number of shortfalls, only one of which bears repeating. Most conspicuously, the government did not hide this evidence from the defendant. According to statements by Lee and Trombitas, *Lee* gave this evidence to the police. *See, e.g.*, JA 99, 289, 355. Evidence known (or even knowable) to the defendant does not constitute suppressed evidence under *Brady*. "There is no Brady violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or

where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotation marks omitted); *see also Carter*, 218 F.3d at 601 ("This Court has recognized that '*Brady* is concerned only with cases in which the government possesses information which the defendant does not.'") (quoting *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994)); *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) ("No *Brady* violation exists . . . where the evidence is available to [a] defendant from another source."). The government does not suppress—indeed it cannot suppress—evidence of "people that [the defendant] identified during his statements to the police, and to whom he had as much access as the police." *Coe*, 161 F.3d at 344.

Lee responds that "the time between the actual robbery and when the government brought the indictment against him [four years] . . . caused him to forget certain facts of the case." Lee Br. at 11. Why that should make a difference, however, is never explained. The fact remains that Lee supplied the name to the government, giving the government no reason to think that it needed to convey this evidence to the defendant. *Brady*, to be sure, requires the government in certain circumstances to supply defendants with evidence that supports an alibi. But it does not require the government to develop the alibi itself.

Lee also alleges that Trombitas committed perjury during the trial. But the allegedly contradictory statements on which he relies are not even inconsistent, much less irreconcilably so. First, he points to Trombitas's testimony that he "called the Department of [Youth] Services," JA 286, and his testimony that he did not record the name of the person who had heard of Lee "because

it was not a significant matter at that point," JA 289. Had Trombitas gone to the trouble of contacting the Department, Lee claims, "it cannot also be true that he believed the evidence to be also insignificant." Lee Br. at 22. Not so. Trombitas already knew that Lee had had contact with someone at the Department; the question was whether that person had any information bearing on the investigation. When that person did not reveal anything material to the investigation, it thus was unnecessary to record the person's name.

Lee next points out that although Trombitas testified that he thought Lee "would have some connection" at the Department of Youth Services, JA 286, he also testified, "I don't know what the relationship was" between Lee and the contact. JA 289. But Lee offers no explanation how these two statements are inconsistent, and they are not. The first statement simply shows that Trombitas thought Lee would have a connection to the Department (because someone knew him there); the second confirms how little information Trombitas had (because he did not know what the relationship between Lee and this contact was).

III.

For these reasons, we affirm.